UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

OLGA ELIZABETH DIAZ,

    Plaintiff

v.                                      Case No. 1:09-cv-882-HJW

MITCHELL'S SALON AND DAY SPA, INC.,

    Defendant

## ORDER

This matter is before the Court upon the defendant's motion for summary judgment (doc. no. 24). Plaintiff opposes the motion. Defendant has filed proposed findings of fact and conclusions of law (doc. no. 26) which plaintiff has highlighted as true, false, or irrelevant (doc. no. 30). Having considered the entire record, including the parties' briefs and related filings (doc. nos. 24, 26, 29, 30, 41), the Court will <u>grant</u> the motion for the following reasons:

**I.  Summary Judgment Standard**

Rule 56(a) of the Federal Rules of Civil Procedure, as recently amended on December 1, 2010, provides in relevant part that:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

**Rule 56(c)(1) further provides that:**

> **A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:**
>
> **(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or**
>
> **(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c)(1).**

Finally, Rule 56(e) provides in relevant part that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion. . . [and] grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it." Fed.R.Civ.P. 56(e).

The Committee Notes explain that the "standard for granting summary judgment remain unchanged" and that the recent amendment of the rule "will not affect continuing development of the decisional law construing and applying" the standard. Fed.R.Civ.P. 56, Committee Notes at 31. Under Rule 56, the moving party bears the burden of proving that no genuine issue of material fact exists. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (l986). The district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. <u>Id</u>. at 587.

## II. Factual Allegations and Procedural History

On December 1, 2009, plaintiff filed a nine-count complaint alleging employment discrimination and retaliation. Specifically, she alleges that her employment was terminated 1) "on account of her absences" under the Family Leave Act ("FMLA") (doc. no. 1, Complaint at ¶¶ 21-25); 2) "because of her age" in violation of the Age Discrimination in Employment Act ("ADEA") and Ohio Rev. Code §§ 4112 ( ¶¶ 26-35); 3) because of her race, color, and national origin in violation of Title VII of the Civil Rights Act of 1964 and Ohio Rev. Code § 4112 (¶¶ 36-62); and 4) "because she complained of discrimination and harassment" in violation of Title VII of the Civil Rights Act of 1964 and Ohio Rev. Code §§ 4112 (¶¶ 63-74). With respect to her race, color, and national origin, plaintiff alleges that her employer treated "her differently than similarly-situated employees" and replaced her "with a similarly situated employee"(doc. no. 1 at ¶¶ 38-39, 51-52).

In her complaint, plaintiff indicates that she is from Ecuador, of Ecuadorian origin, and was born on January 4, 1953 (doc. no. 1 at ¶ 7). She indicates she began working as a skin technician for defendant Mitchell's Salon and Day Spa, Inc. ("Mitchell's Salon") in 1989 and left in 1992.[1] She returned to work at Mitchell's Salon in August of 1998, and worked there until her employment was terminated on June 26, 2008 (¶ 10).

In her complaint, plaintiff generally alleges that at some unspecified time, she

---

[1] In the briefs, the parties both indicate that plaintiff actually began working at the salon in 1988 (doc. nos. 26 at ¶ 15; 29 at 6).

complained to her employer "about racially harassing and discriminatory language" used by one unidentified manager, but that the defendant did not take any steps to protect her from further "hostilities" (¶ 13).[2] Plaintiff alleges that some time after that, the defendant reprimanded her "in part" for taking too much time off from work (¶ 14) and criticized her at a meeting (¶ 16-17). Plaintiff indicates she was "taking time off from work to care for her daughter and to take her seriously ill mother to doctors' appointments" (¶ 15). Plaintiff alleges that in January of 2008, defendant issued plaintiff her first negative performance evaluation (¶ 18).

On June 26, 2008, defendant terminated plaintiff's employment for the stated reason that the salon had received multiple customer complaints about plaintiff's services (¶ 19). Plaintiff alleges that other employees received more complaints without being disciplined or terminated, and that the defendant failed to follow its own disciplinary procedures (¶ 19). She alleges that the defendant replaced her "with non-Ecuadorian employees of American decent (sic) in their 20's" (¶ 20).

### III. Analysis

### A. Relevant Law

Plaintiff has alleged discrimination and retaliation under a variety of state and

---

[2] Plaintiff's complaint sets forth no specific language, no relevant dates of any such incidents, and no names of any persons allegedly involved. Plaintiff later indicated that she was referring to manager Chris Gilbert, who did not participate in the decision to terminate plaintiff's employment. The evidence reflects that plaintiff's immediate supervisor, Ms. Robin Drake, with the approval of the general manager Mr. Michael Batchelor, made the decision to terminate plaintiff's employment (doc. nos. 24 at 4; 41 at 12-13, citing Batchelor Depo. at 82-83).

federal statutes. Title VII of the Civil Rights Act of 1964 provides that an employer may not "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, . . . or national origin" 42 U.S.C. § 2000e-2(a)(1). Title VII also makes it unlawful for an employer to retaliate against an employee for opposing any practice made unlawful by Title VII or for filing a charge under Title VII, 42 U.S.C. § 2000e-3(a); Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 56 (2006). In addition, the ADEA forbids an employer from discharging an employee "because of such individual's age." 29 U.S.C. § 623(a)(1). Schoonmaker v. Spartan Graphics Leasing, LLC, 595 F.3d 261, 264 -265 (6th Cir. 2010).

Under state law, the Ohio Revised Code makes it unlawful "[f]or any employer, because of the race, color. . . national origin. . . [or] age of any person . . . . to discharge . . . or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Rev.C. § 4112.02. Given the similarity to federal discrimination law, courts apply Title VII precedent to interpret § 4112.02. Hampel v. Food Ingredients Specialties, Inc., 729 N.E.2d 726, 731 (Ohio 2000); Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 333 (6th Cir. 2008). This Court's analysis under Title VII therefore applies equally to plaintiffs' claims under Ohio Rev.C. § 4112.

In addition, an employer may not retaliate against an employee for taking FMLA leave. 29 U.S.C. § 2615(a)(2); Hunter v. Valley View Local Schools, 79 F.3d

688, 690 (6th Cir. 2009). The FMLA entitles an eligible employee to twelve weeks of leave during any twelvemonth period because of "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA provides that it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter," 29 U.S.C. § 2615(a)(1), and that it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).

Plaintiff presents no direct evidence that the defendant unlawfully discriminated or retaliated against her on any of the alleged bases. Thus, she must make her case with indirect evidence under the burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). The plaintiff must first put forth a prima facie case of discrimination by showing that (1) she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees. <u>DiCarlo v. Potter</u>, 358 F.3d 408, 414 (6th Cir. 2004).[3]

Once a plaintiff has presented a prima facie case, the burden shifts to the employer to "articulate a nondiscriminatory reason for its action." <u>Harris v. Metro.</u>

---

[3]A court may not consider the employer's alleged nondiscriminatory reason for firing the employee when it analyzes the plaintiff's prima facie case. <u>Wexler v. White's Fine Furniture, Inc.</u>, 317 F.3d 564, 574 (6th Cir. 2003) (en banc).

**Gov. of Nashville & Davidson Cnty., Tenn., 594 F.3d 476, 485 (6th Cir. 2010). Employers who provide a legitimate, non-discriminatory reason for their promotion decision will be entitled to summary judgment unless plaintiffs can rebut the employer's explanation by demonstrating pretext. Id. at 485; Schoonmaker v. Spartan Graphics Leasing, LLC, 595 F.3d 261, 264 (6th Cir. 2010).**

**A plaintiff can show pretext in three ways: (1) that the reason had no basis in fact, (2) that the reason did not actually motivate the termination, or (3) that the reason was insufficient to motivate the employer's action. Chen v. Dow Chemical Co., 580 F.3d 394, 400 (6th Cir. 2009). If plaintiff fails to carry this burden, summary judgment is appropriate. The ultimate question in every employment discrimination case is whether the plaintiff was the victim of intentional discrimination. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153 (2000). The plaintiff retains the ultimate burden of persuasion at all times. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981).[4]**

**The burden-shifting framework is applicable to all of plaintiff's alleged grounds of discrimination, including cases involving retaliatory discharge under the FMLA.[5] See, e.g., Godfredson v. Hess & Clark, Inc., 173 F.3d 365, 371 (6th Cir. 1999)**

---

[4]**With respect to age discrimination, the burden of persuasion remains on the plaintiff at all times to demonstrate "that age was the 'but-for' cause of their employer's adverse action." Schoonmaker, 595 F.3d at 264 (quoting Gross v. FBL Fin. Servs. Inc., 129 S.Ct. 2343, 2351 fn. 4 (2009).**

[5]**Although the United States Supreme Court has declined to decide whether the McDonnell Douglas framework applies to ADEA cases, see Gross, 129 S.Ct. at 2349, the Court of Appeals for the Sixth Circuit has held that ADEA claims based on circumstantial evidence are analyzed under the McDonnell Douglas test. See**

(age); Spengler v. Worthington Cyclinders, 615 F.3d 481, 491 (6th Cir. 2010) (age, retaliation); Barnett v. Dep't of Veterans Affairs, 153 F.3d 338, 343 (6th Cir. 1998) (retaliation); Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241, 1246 (6th Cir. 1995) (race); Edgar v. JAC Products, Inc., 443 F.3d 501, 507 (6th Cir. 2006) (FMLA); Skrjanc v. Great Lakes Power Service Co., 272 F.3d 309, 314-15 (6th Cir. 2001) (McDonnell Douglas applies when analyzing plaintiff's claim that he was fired in retaliation for taking sick leave).

### B. Plaintiff's FMLA Claim

Defendant initially clarifies one point about plaintiff's FMLA claim in Count 1 of the complaint. Defendant points out that plaintiff has pleaded a FMLA retaliation claim, but not an interference claim. Although plaintiff captions Count 1 in her complaint as both "FMLA Interference and Retaliation," defendant correctly points out that plaintiff has not pleaded any facts that would support an "interference" claim. She does not allege in her complaint that she ever requested or was denied any FMLA leave. Rather, plaintiff alleges in Count 1 that her employment was terminated "on account of her absences under the FMLA" (doc. no. 1 at ¶ 23). Thus, she has pleaded only a retaliation claim.

The "retaliation" theory arises from 29 U.S.C. § 2615(a)(2), which provides that it "shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this

---

Geiger v. Tower Automotive, 579 F.3d 614, 622 (6th Cir. 2009).

subchapter." To make a prima facie case of FMLA retaliation, plaintiff must show that: (1) she exercised protected rights under the FMLA; (2) the employer took an adverse employment action against her, and (3) there was a causal connection between the plaintiff's exercise of her FMLA rights and the adverse employment decision. Skrjanc, 272 F.3d at 314-15. Like plaintiff's other alleged grounds for discrimination, the burden-shifting analysis applies to plaintiff's FMLA retaliation claim. The burden of production shifts to the employer to put forth a "legitimate, nondiscriminatory reason" for the discharge, and then shifts back to the plaintiff to put forth evidence that the reason was a "pretext." Id.; Edgar v. JAC Prods., Inc., 443 F.3d 501, 508 (6th Cir. 2006).

**C. The Employer's Legitimate Non-Discriminatory Reason for Firing Plaintiff and Plaintiff's Arguments Regarding Pretext**

After the parties conducted discovery regarding the actual specific facts underlying plaintiff's claims, defendant moved for summary judgment. Defendant asserts that plaintiff was fired for customer complaints about her poor performance and that her termination had nothing to do with any type of discrimination or retaliation. Defendant points to the following undisputed facts in the record regarding the circumstances of plaintiff's termination.[6]

Plaintiff worked as an "aesthetician" at Mitchell's Salon and performed waxing, facials, and body treatments (doc. no. 30 at ¶ 3, 5). Michael Batchelor was the general manager, and Robin Drake was the department manager of the

---

[6] Any related points of disagreement are noted herein.

aestheticians at the salon (¶ 4). Sanitation procedures must be followed by aestheticians in the administration of hot wax treatments (¶ 6, 8). Plaintiff understood the salon's written policy prohibiting the double-dipping of wax, which was intended to prevent cross-contamination of hot wax applied to the skin of different customers (¶¶ 11-13).

In mid-2007, plaintiff began having a difficult time due to various personal problems, including her break-up with her partner and the illness of her mother (doc. no. 30 at ¶ 17). Plaintiff was given her written bi-annual performance review on January 29, 2008 (doc. no. 26, Ex. 2, indicating that plaintiff's retail percentage was the second-lowest in the department, indicating several areas that were "unsatisfactory" and numerous areas where "more is expected" regarding plaintiff's performance, acknowledging that plaintiff had been going through a "hard time" last quarter, and encouraging plaintiff to make the new year a "good one"). Plaintiff does not dispute that she was having a hard time outside of work and that she was given a negative review on January 29, 2008 (doc. no. 30 at 17-18).

In the spring of 2008, the salon received numerous customer complaints about plaintiff's services (doc. no. 30, ¶¶ 19, 26, 29, 32, 42). Plaintiff does not dispute that her employer received these customer complaints, rather, she challenges the customers' basis for their complaints, argues that the problems were "not her fault," or indicates she does not recall the particular customer complaint.

Specifically, on April 12, 2008, salon customer Ms. Wilemski indicated she wanted to speak with a manager and was "unhappy" with plaintiff's services (doc.

nos. 30 at ¶ 20; 26, Ex. 3 "Customer Complaint Form" indicating that her service was "too rushed" and that plaintiff had "waxed everything at the same time," that she "hated" the eyebrow job plaintiff had done, that plaintiff made the eyebrows "too thin" and "didn't even put anything on brows after wax"). As a result of the poor service, plaintiff did not receive commission.[7]

On May 23, 2008, a second customer, Gale Carraher, complained to the salon about the waxing treatment she received from plaintiff (doc. nos. 30 at ¶¶ 24, 26; 26, Ex. 4, 5). Ms. Carraher, a regular at the salon, indicated that plaintiff had been "brutally rough," "had "ripped her skin off in about 7 places," that she "had scabs all over her face,"and that "she felt like she had been assaulted." The customer was "livid," and the salon refunded her money and gave her a product to help prevent facial scarring. In the written note about the customer complaint, Ms. Drake noted that she had spoken with plaintiff about it and that plaintiff did not remember anything being wrong with this customer after the appointment (doc. no. 26, Ex. 4). Plaintiff acknowledges that the customer "may have made a complaint like this" but denies that she was "brutally rough" or that she was told about it (doc. no. 30 at ¶ 27). However, plaintiff acknowledged at deposition that Ms. Drake did in fact speak with her about the Carraher complaint (doc. no. 29 at 20, citing Diaz Depo. at 97-99).

On June 6, 2008, a third salon customer Mera Shtiewi called twice to complain about the waxing service performed by plaintiff on June 5, 2008 because plaintiff "didn't get most [of the] hair off where she waxed" (doc. no. 30 at ¶¶ 29-30). The

---

[7]The salon defendant refers to this as being ("JANGed").

customer demand a refund rather than a new appointment (doc. no. 26, Ex. 6). Plaintiff contends that the poor results were not her fault and that she explained the reasons to the customer (doc. no. 30 at ¶ 30). Due to the unsatisfactory service, plaintiff did not receive commission for this service.[8]

On June 9, 2008, a fourth customer, Elle Morris, complained to the salon about plaintiff's services (doc. no. 26, Ex. 7). Ms. Morris, a regular customer, was seven months pregnant and came in for a facial and eyebrow waxing for her baby shower the next day. She indicated that plaintiff was late for the appointment without explanation, that plaintiff did not ask her any questions before waxing, that plaintiff did not do any skin assessment or analyze her skin using a "mag" light, that plaintiff did not cover the customer's hair during the waxing, that the products and towels were just "slapped on her face," that it was "obvious" to her that plaintiff wanted to be anywhere but in that room, that plaintiff left the room six times for up to 20 minutes at a time, and that the following day, the customer's eyes were "so irritated, red and, swollen" that she had to go to another salon to have her hair styled in an attempt to cover it (Id.). Plaintiff contends that it was not her fault that the client had an allergic reaction or that the salon double-booked her (doc. no. 30 at ¶¶ 34-35).

The next day (June 10, 2008), Ms. Drake wrote up a "Disciplinary Action Form" referencing previous discussions with plaintiff regarding complaints about plaintiff leaving the room while working on customers and that "I made it clear this must

---

[8]Plaintiff also briefly mentions an additional complaint on the internet City Search website which indicated that plaintiff was "terrible"(doc. no. 29 at 24).

stop" (doc. no. 26, Ex. 7). Ms. Drake indicated "this is unacceptable customer service" and circled Option B which warned that further complaints would result in "immediate termination" (Id.). Plaintiff does not dispute that the form so provides, rather she indicates she does not "recall" seeing this document and that "it does not bear her signature" (doc. no. 30 at ¶ 37). The document contains several signatures indicating that plaintiff refused to sign for receipt of the document. Defendant points to plaintiff's deposition testimony that she remembered Ms. Drake warning her that if she got another customer complaint like the one from Elle Morris, "It would result in her immediate termination." (doc. no. 41 at 19, citing Diaz Depo. at 85-86).

Shortly thereafter, on June 19, 2008, a fifth salon customer, Rachael Dobyns, reported that plaintiff was "rough" during her bikini wax treatment and that she felt as if she had been "abused" by plaintiff (doc. no. 26, Ex. 8). This customer also reported that she saw plaintiff double-dipping the wax stick. She complained that plaintiff spent only twenty minutes doing a bikini wax job that normally took an hour. She indicated that afterwards, "the pain was very intense, she had large welts and was very swollen, she could not even go to work the next day she was so uncomfortable" (doc. no. 30 at ¶¶ 40-41). Ms. Dobyns further indicated that she and a group of ten friends had planned to come to the salon next month for a pre-vacation waxing, but that she was now "very reluctant" to do so (doc. no. 26, Ex. 8). The salon refunded the customer's money.

Plaintiff admits double-dipping the wax in violation of salon policy, but contends that there was no chance of cross-contamination because she only used

it on one client (doc. no. 30 at ¶ 40). Plaintiff also argues that she is not responsible for the allergic reaction of a customer (Id. at ¶ 41). The salon's policy against double-dipping indicates that "the importance of sanitation cannot be overemphasized" and states in bold type "NO EXCEPTIONS" (doc. no. 26, Ex. 1).

Ms. Drake wrote up a "Disciplinary Action Form" on June 26, 2008 advising plaintiff that her employment at the salon was terminated. The form was signed by the manager and a witness, and indicates that plaintiff refused to sign it (doc. no. 26, Ex. 9). Plaintiff indicates she does not "recall" receiving this documents and does not believe that Ms. Dobyns' complaint "motivated her termination" (doc. no. 30 at ¶¶ 42-43).[9]

In its brief, defendant assumes that plaintiff has met its prima facie case under the various statutes and emphasizes that, based on the numerous customer complaints about plaintiff's services, it had a legitimate nondiscriminatory reason for discharging her. Indeed, the customer complaints amply support defendant's stated sole reason for firing the plaintiff.

At the next step of the analysis, plaintiff has failed to produce evidence showing that the defendant's reason for her discharge was a pretext for discrimination. Plaintiff acknowledges the various customer complaints about her services. Although plaintiff makes excuses or offers explanations for why she feels certain aspects of the various customer complaints were not justified in her opinion,

---

[9]Defendant points out that plaintiff's self-serving inability to "recall" certain documents or events does not by itself create any "genuine dispute" as to any material facts (doc. no. 41 at 14).

she does not deny that numerous salon customers repeatedly complained about her services. Although plaintiff argues that she is not responsible for customers' allergic reactions or any double-booking that made her "leave the room," she does not address the customers' complaints about her "roughness" and other dissatisfaction with her poor customer service.

Plaintiff has not shown that the stated reason for her discharge, i.e. numerous customer complaints, lacked a basis in fact or was insufficient to motivate the salon to fire her. Plaintiff has not shown that the decision to terminate her employment was so unreasonable as to give rise to any inference of pretext. See <u>Schoonmaker</u>, 595 F.3d at 264 -265; <u>Sybrandt v. Home Depot, U.S.A., Inc.</u>, 560 F.3d 553, 558 (6th Cir. 2009). "At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation." <u>Chen</u>, 580 F.3d at 400 n. 4. The plaintiff "need only produce enough evidence ... to rebut, but not to disprove, the defendant's proffered rationale." <u>Grizzell v. City of Columbus Div. of Police</u>, 461 F.3d 711, 719 (6th Cir. 2006). Here, plaintiff has not done so. The evidence of record indicates that the defendant's decision to fire the plaintiff was a legitimate business decision based on customer complaints.

Plaintiff has not presented evidence from which a jury could reasonably infer that her discharge was a pretext for any form of discrimination. Although the summary judgment standard requires that evidence of record be viewed in the light most favorable to the nonmoving party, it does not require that all bald assertions,

-15-

opinions, or even genuinely held beliefs asserted by the nonmoving party be adopted wholeheartedly by a court. Plaintiff's unsupported belief that Ms. Dobyns' complaint did not "motivate her termination" is unavailing (doc. no. 30 at ¶¶ 42-43).

To the extent plaintiff generally alleges in her complaint that she was treated differently from a similarly-situated employees outside the protected class of her race, color, or national origin, plaintiff contends in her brief that another employee (Carol Estell) received vacation pay in her ninth year of employment (doc. no. 29 at 4), whereas plaintiff had to wait until her tenth year. This would pertain to the fourth prong of the prima facie case rather than pretext. Mitchell v. Vanderbilt Univ., 389 F.3d 177, 181 (6th Cir. 2004) (observing that a plaintiff can satisfy the fourth prong of the prima facie case by showing that she "was treated differently from similarly situated employees outside the protected class"). In any event, defendant has submitted the actual pay records for plaintiff confirming that plaintiff did in fact receive vacation pay in her ninth year (doc. no. 41 at 10, fn.2 and Ex. A). Defendant has shown that plaintiff's "disparate treatment" allegations on such basis are factually baseless.

In her brief, plaintiff also lists some customer complaints received about other employees (doc. no. 29 at 26). Plaintiff lists six other "aestheticians" who allegedly each had a single customer complaint. She does not indicate that any of these employees had multiple complaints within a short period of time, nor did any of the complaints involve the double-dipping of wax, which is expressly forbidden by the salon's written policy (Id. at 26). These employees with a single complaint were not

"similarly-situated" to plaintiff, who had a string of serious customer complaints in less than two months. Plaintiff's allegation that other employees received "more" complaints without being disciplined or terminated (doc. no. 1 at ¶ 19) is unsubstantiated by any evidence.

Although plaintiff argues that another employee (Hornsby) admitted at deposition that she had double-dipped wax when at the end of a wax stick, no customer had ever complained to the salon about Hornsby's transgression and nothing in the record suggests the salon was aware of it (doc. no. 29 at 23). Defendant points to the deposition testimony of Ms. Drake, who indicated she had asked the other aestheticians if they double-dipped wax and they responded that they did not (doc. no. 24 at 17, citing Drake Depo. at 135-36). Plaintiff has failed to produce any evidence suggesting that she was treated differently. On summary judgment, courts must draw all inferences in favor of the nonmoving party "to the extent supportable by the record." Scott v. Harris, 550 U.S. 372, 381 fn. 8 (2007). However, courts are not obligated to draw unreasonable inferences in a plaintiff's favor. Audi AG v. D'Amato, 469 F.3d 534, 545 (6th Cir. 2006).

With respect to the salon's written policy against double-dipping of hot wax, "[d]isputes about the interpretation of company policy do not typically create genuine issues of material fact regarding whether a company's stated reason for an adverse employment action is only a pretext designed to mask unlawful discrimination." Sybrandt, 560 F.3d at 558-559 (explaining that "as long as an employer has an honest belief in its proffered nondiscriminatory reason for

discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect"); and see, Majewski v. Auto. Data Processing, Inc., 274 F.3d 1106, 1117 (6th Cir. 2001).

An employer has an honest belief in its rationale when it reasonably relied on the particularized facts that were before it at the time the decision was made. Allen v. Highlands Hosp. Corp., 545 F.3d 387, 398 (6th Cir. 2008) (quoting Michael v. Caterpillar Financial Services Corp., 496 F.3d 584 (6th Cir. 2007)). "The key inquiry in assessing whether an employer holds such an honest belief is whether the employer made a reasonably informed and considered decision before taking the complained-of action." Id. In the present case, there is no genuine issue of material fact as to whether Mitchell's Salon held an honest belief that plaintiff had violated company policy regarding double-dipping of hot wax. Moreover, given the multiple customer complaints, negative evaluation, and warning to plaintiff, the salon's decision to terminate plaintiff's employment was considered and reasonably informed.

One final point bears mentioning with respect to plaintiff's age discrimination claim. Although the parties have primarily argued the final step of the analysis, i.e. "pretext," the defendant points out that plaintiff's duties were assumed by Carol Feldman who was 52 years old (seven years older than plaintiff) (doc. no. 24 at 10, fn. 3, citing Drake Depo. at 53-55). Plaintiff's allegation that defendant replaced her "with non-Ecuadorian employees of American decent (sic) in their 20's" (doc. no. 1 at ¶ 20) is unsupported. For purposes of making a prima facie case, plaintiff has not

offered evidence that she was replaced by someone substantially younger.[10] In any event, even assuming that plaintiff did make a prima facie case, she has not rebutted defendant's legitimate nondiscriminatory reason for terminating her employment.

**D. Oral Argument Not Warranted**

Local Rule 7.1(b)(2) provides that courts have discretion whether to grant requests for oral argument. Although plaintiff requests oral argument on her motion, the Court finds that the pleadings and exhibits are clear on their face and that oral argument is not warranted here.

**IV. Conclusion**

The defendant has articulated a legitimate, nondiscriminatory reason for the termination of the plaintiff's employment, namely, the salon received numerous customer complaints about plaintiff's services in less than two months. Viewing the evidence in the light most favorable to plaintiff, the Court finds that plaintiff has failed to set forth sufficient evidence creating a genuine dispute of material fact as to whether the defendant discharged her in retaliation for taking FMLA leave or for any other discriminatory reason. Defendant is entitled to summary judgment on plaintiff's claims.

---

[10]**Plaintiff was over forty, and thus, was a member of a protected class when she was discharged. Defendant acknowledges that plaintiff was qualified to perform her job.**

In accordance with the foregoing, the defendant's "Motion for Summary Judgment" (doc. no. 24) is GRANTED.

IT IS SO ORDERED.

                                                                           s/Herman J. Weber
                                                             **Herman J. Weber, Senior Judge**
                                                             **United States District Court**